# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRIAN E. TERRY,

     Plaintiff,

     v.                                      Case No. 08-C-0330

MICHAEL J. ASTRUE,
 Commissioner of the
 Social Security Administration,

     Defendant.

# DECISION AND ORDER

## NATURE OF CASE

The plaintiff, Brian E. Terry, commenced this action on April 21, 2008, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his applications for disability insurance benefits and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. § 405(g). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.).

## PROCEDURAL HISTORY

On March 19, 2004, the plaintiff filed an application for disability insurance benefits. He also protectively filed an application for supplemental security income on February 17, 2004. In both applications, he alleged disability beginning August 28, 2002, because of limited use of his right arm, severe back pain and a bad leg. The plaintiff's claims were denied initially on September 2, 2004, and upon reconsideration on January 19, 2005. The plaintiff filed a late

request for a hearing and good cause for the late filing was found by the Administrative Law Judge (ALJ). A hearing was set for August 31, 2005, but the plaintiff did not appear. The hearing was reset for December 22, 2005, and the plaintiff appeared without counsel. As a result of the plaintiff's testimony, the ALJ sent the plaintiff for a consultative examination, but since he was incarcerated, the examination was not done until June 29, 2007.

On December 4, 2007, a hearing was held before an Administrative Law Judge (ALJ). The plaintiff appeared in Gary, Indiana and testified by video. The ALJ, who was in Orland Park, Illinois, presided over the hearing. Also appearing and testifying were William Newman, M.D., an impartial medical expert, Cheryl Hoiseth, a vocational expert and Ethel Terry, the plaintiff's mother. The plaintiff was represented by counsel at the hearing.[1]

In a December 27, 2007, decision, the ALJ found that the plaintiff had not engaged in substantial gainful activity since August 28, 2002, and that he had the following severe impairments: gout, degenerative disk disease and residuals of a gunshot wound basically to his right arm. However, the ALJ found that the plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, including 1.02 and 1.04 (20 C.F.R. §§ 404.1520[d], 404.1525, 404.1526, 416.920[d], 416.925 and 416.926).

The ALJ further found that the plaintiff "has the residual functional capacity (RFC) to perform light work and no repetitive but frequent fine finger manipulation and forceful grasping with right (dominant) hand." (Tr. 16). Although the ALJ stated that the plaintiff is capable of

---

[1] The hearing transcript and the ALJ's decision state that Frederick J. Daley, Jr. represented the plaintiff. However, in the plaintiff's initial memorandum, the plaintiff states that Steven Weinstein, a non-attorney who works for Mr. Daley submitted the pre-hearing memorandum and appeared to represent the plaintiff. (Plaintiff's Memorandum in Support of Summary Judgment or Remand at 2, n.1). Actually, the hearing transcript states that the plaintiff was represented by attorney "Frederick J. Bailey." (Tr. 417).

performing his past relevant work as a pricer-sorter, he further found that, based on the plaintiff's age, education, past relevant work experience, his RFC and the vocational expert's testimony, there are other jobs in the national economy that the plaintiff could perform. Accordingly, the ALJ concluded that the plaintiff was not disabled as defined in the Social Security Act from August 28, 2002, until the date of the decision. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review.

The history of this case is well summarized in the record. Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## APPLICABLE LAW

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a plaintiff must demonstrate that his physical or mental impairments prevent him from doing not only his previous work, but any other substantial gainful employment which exists in the national economy considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence:  1) whether the plaintiff is currently unemployed; 2) whether the plaintiff has a severe impairment; 3) whether his impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff possesses the residual functional capacity

-3-

(RFC) to perform his past relevant work; and 5) whether the plaintiff is capable of performing any other work existing in significant numbers in the national economy given his age, education, and work experience.  See  Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-3 (7th Cir. 1993).  If a plaintiff satisfies steps one, two and three, he will automatically be found disabled.  If a plaintiff satisfies steps one and two, but not three, then he must demonstrate that he lacks the residual functional capacity to perform his past work.  The plaintiff bears the burden at steps one through four.  Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

Once step four is satisfied, the burden shifts to the Commissioner to establish that the plaintiff is capable of performing work in the national economy.  Briscoe, 425 F.3d at 352; Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004); Knight, 55 F.3d at 313.  The process is sequential and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step.  20 C.F.R. § 404.1520(a)(4).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid."  The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (his maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his vocationally relevant past work.

Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule

-4-

directs a conclusion as to whether the individual is disabled. See Haynes v. Barnhart, 416 F.3d 621, 627 (7th Cir. 2005). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Id. at 627-28.

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work he is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Sheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blakes v. Barnhart, 331 F.3d 565, 568 (7th Cir. 2003); see also, Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

-5-

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

## **ANALYSIS**

On appeal, the plaintiff challenges the ALJ's findings at steps four and five – the determination of residual functional capacity (RFC) and the plaintiff ability's to perform his past relevant work, raising three separate arguments. First, the plaintiff maintains that the ALJ failed to properly review the evidence of record and weigh the opinions of record. Second, the plaintiff contends that the ALJ failed to submit a proper hypothetical question to the vocational expert. The plaintiff also asserts that the ALJ failed to comply with Social Security Ruling (SSR) 00-4P by failing to determine whether the vocational expert's testimony was consistent with the Dictionary of Occupational Titles (DOT). Third, the plaintiff asserts that the ALJ ignored his reports of pain and failed to properly evaluate his credibility pursuant to SSR 96-7p.

**1.    Whether the ALJ Improperly Failed to Properly Review the Evidence of Record and Weigh the Opinions of Record.**

The plaintiff contends that the ALJ improperly relied on the testimony of the medical expert, Dr. Newman, and ignored other objective evidence. Specifically, the plaintiff asserts that the ALJ failed to take into consideration the plaintiff's back impairments, gout, depression, education level and obesity.

It is well-established that the opinion of a treating doctor who has examined the plaintiff is generally given more weight than the opinion of a doctor who has not examined the plaintiff. 20 C.F.R. § 1527(d). "Treating source opinions must be given special consideration in social security cases." Patterson v. Barnhart, 428 F.Supp.2d 869, 882 (E.D. Wis. 2006) (citing Dominguese v. Masanari, 172 F.Supp.2d 1087, 1100 [E.D. Wis. 2001]). If the treating doctor's opinion is well supported by the medical evidence, including clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence, "the ALJ must afford such opinions controlling weight." Patterson, 428 F.Supp.2d at 843 (citations omitted). The ALJ may not simply reject the treating source's opinion if he finds that it is not entitled to controlling weight. Id. (citing SSR 96-2p). Rather, the ALJ must evaluate the weight of the opinion by looking at the length, nature and extent of the treatment relationship of the plaintiff and the physician, the degree to which the opinion is supported by the evidence and its consistency with the record as a whole, whether the doctor is a specialist and "other factors." Patterson, 428 F.Supp.2d at 883 (quoting 20 C.F.R. § 404.1527[d]). "Regardless of the weight the ALJ ultimately gives the treating source opinion, she must always give good reasons for her decision." Wates v. Barnett, 274 F.Supp.2d 1024, 1034 (E.D. Wis. 2003) (quoting 20 CFR § 404.1527[d][2]).

The evidence in this case shows that in August 2004, the plaintiff underwent a consultative evaluation at the request of the state agency. Herbert White, Jr., M.D., reported that the plaintiff's right upper extremity had "moderate generalized tenderness," with no swelling, a normal range of motion except in his shoulder, no clubbing, no atrophy, and palpable pallets in the axillary region. (Tr. 339). The plaintiff's left upper extremity was normal. In the right lower extremity, the plaintiff had no tenderness except in the foot and lower leg, "which was

-7-

mildly tender." Id. There was no swelling, a normal range of motion in all joints, no edema, and no atrophy. The left lower extremity had no tenderness, except the foot and leg which was mildly tender with no swelling, a normal range of motion in all joints, no edema and no atrophy. The lumbar spine had "no anatomic abnormality, no spinal tenderness, severe paraspinal tenderness," and bilateral positive straight leg raising at 30 degrees. (Tr. 340). There was no muscle spasm.

The plaintiff had normal muscle strength, normal (5/5) grip strength on the left and good (4/5) grip strength on the right. His fine and gross finger manipulation was normal. His gait was "moderately antalgic with complaints of pain in both feet." Id. The plaintiff had "moderate" limitations in getting on and off the examining table and tandem walking and "severe" limitations in standing on his toes or heels, squatting and standing on one leg. Id. The plaintiff's mental status appeared normal. Dr. White stated that the plaintiff was status post gunshot wound to his right axilla with resulting pain and decreased grip strength of the arm. The plaintiff also had low back pain resulting in "tenderness and a decreased range of motion in his back." (Tr. 341). The plaintiff had bilateral lower extremity pain resulting in an antalgic gait.

After Dr. White's examination, L. Bastnagel, M.D., a state agency reviewing physician, concluded that the plaintiff could perform medium work. (Tr. 344-51). He also stated that the severity of the symptoms as reported by the plaintiff were not supported by the clinical evidence.

On November 12, 2004, David Chube, M.D., the plaintiff's treating physician, completed a form assessing the plaintiff's ability to work when the plaintiff applied for services from the Wisconsin Division of Vocational Rehabilitation. (Tr. 372-74). Dr. Chube described the plaintiff's overall health as poor. He concluded that the plaintiff could occasionally bend and squat and never climb. He further concluded that the plaintiff could use his right and left hands

-8-

for repetitive grasping, but not fine manipulation or pushing or pulling and that he could not use either foot for repetitive movements. Dr. Chube attributed the plaintiff's limitations to a contusion to the head and abdomen, which is inconsistent with other findings of record. (Tr. 373).

In January 2005, M.J. Baumblatt, M.D., a state agency reviewing physician, concluded that the plaintiff was limited to a range of sedentary work with some postural limitations and limitations on reaching. (Tr. 389-96). In so concluding, Dr. Baumblatt determined that Dr. Chube's work restrictions were not well supported by the objective findings. Dr. Baumblatt concluded that the objective findings demonstrated that the plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk for a total of at least two hours in an eight-hour workday and sit for a total of about six hours in an eight-hour workday. He also concluded that the plaintiff could frequently balance, kneel and crawl, occasionally climb ramps/stairs, stoop and crouch and never climb a ladder, rope or scaffolding.

Dr. Newman, an impartial medical expert who testified at the December 4, 2007, hearing, stated that he believed gout is causing the plaintiff's symptoms and problems. (Tr. 451). He explained that the plaintiff has a bullet in his back, as well as other soft tissue injuries in which the gout can settle. Dr. Newman thought that the pain and swelling in the plaintiff's back was caused by gout and could be relieved with the proper medication. He noted that the record contained a negative x-ray of the plaintiff's spine and a high uric acid reading, evidencing gout. He further testified that the plaintiff's condition did not meet or equal the requirements of an impairment in the Listing of Impairments. According to Dr. Newman, the plaintiff had a RFC for a range of "light" work. (Tr. 453). He noted that although the plaintiff stated he had decreased movement in his right arm, the plaintiff was able to elevate his shoulder to 90 degrees while

-9-

reciting the oath. Finally, Dr. Newman testified that the plaintiff had some impairment in the use of his right upper extremity with some restriction in the motion of his fingers, but he was able to do "simple grasping." (Tr. 455-56).

On June 29, 2007, the plaintiff underwent a consultative psychological examination at the Lake County jail. Craig A. Nordstrom, Psy.D., noted that the plaintiff reported a history of cocaine dependence from age 20 to 47 and a history of chronic depression. After the examination, Dr. Nordstrom diagnosed the plaintiff with Major Depressive Disorder, Recurrence, Moderate", and cocaine dependence in sustained full remission with a Global Assessment Functioning of 55.[2] (Tr. 399).

Dr. Nordstrom also completed a Medical Source Statement of Ability to Do Work Related Activities (Mental). Dr. Nordstrom indicated that the plaintiff had mild limitations in understanding and remembering complex instructions, carrying out complex instructions, making work-related judgments, and interacting with the public, supervisors and co-workers. The plaintiff testified that he has experienced depression often and was hospitalized in 2005 for depression. He stated that he saw a psychologist, but that he was "okay now." (Tr. 446).

In addressing the plaintiff's non-exertional mental limitations, the ALJ stated that he agreed with the assessment of the state agency's finding that the plaintiff's mental impairment is non severe. The ALJ also agreed with Dr. Nordstrom's findings of mildly impaired ability to understand, remember, and carry out instructions and interact appropriately with supervisors, co-workers, and the public and to respond to changes in the routine work setting. The ALJ

---

[2]The Global Assessment of Functioning (GAF) is a rating of overall psychological functioning. A rating of 31-40 denotes some impairment in reality testing or communication or major impairment in several areas, such as work or school or family relations, judgment, thinking or mood (e.g. neglects family, unable to work, etc.). American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. text edition 2000)

-10-

further stated that the plaintiff should have no more than occasional contact with the public and should do no work around hazards or common dangers.

The ALJ concluded that the plaintiff has a RFC to perform light work and no repetitive but frequent fine finger manipulation and forceful grasping with the right (dominant) hand. In so concluding, the ALJ gave little weight to the RFC of the plaintiff's treating physician (Dr. Chube) for occasional bending or squatting and no climbing, fine manipulation, pushing, pulling, or operating foot controls. He also gave little weight to the state agency's RFC for lifting less than 10 pounds frequently, standing and/or walking at least two hours in a eight-hour workday, limited reaching no exposure to hazards or climbing ladder, rope, or scaffolds, and occasional stooping, crouching, or climbing ramp or stairs and the state agency's RFC for medium work with occasional postural activities since they did not have the benefit of medical evidence submitted subsequent to their decisions. The ALJ gave considerable weight to the opinion of Dr. Newman, the independent medical expert who testified at the hearing.

Although giving considerable weight to Dr. Newman's opinion, the ALJ failed to explain why he did not credit his testimony that the gout is causing the plaintiff pain not only in his feet but also in his back. Moreover, the ALJ found the plaintiff's gout to be severe, but did not include any limitations resulting from the gout in the RFC. The ALJ also failed to give good reasons why he rejected the plaintiff's treating physician's opinion and ignored other evidence of record. See Schmidt v. Barnhart, 395 F.3d 737, 746-47 (7th Cir. 2005). The ALJ must rationally articulate the grounds for his decision. Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). The court's review of the ALJ's decision is confined to the reasons supplied by the ALJ. Id.

-11-

In addition, the ALJ completely failed to consider the effect of the plaintiff's obesity. Although a failure to consider the effect of obesity is subject to harmless-error analysis, the defendant did not respond to the plaintiff's assertion that the ALJ failed to address his obesity. Therefore, the defendant has presented no evidence which could persuade this court that the ALJ's error on this point was harmless. See Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).

In addition, the ALJ failed to consider any mental limitations relying on Dr. Nordstrom's mild findings. However, the ALJ ignored Dr. Nordstrom's findings that the plaintiff has a GAF score of 55 and decreased concentration. Moreover, the ALJ failed to consider the plaintiff's education level. At the plaintiff's 2005 hearing, the plaintiff testified that he was only able to read and write at a third grade level. (Tr. 407). Although Dr. Nordstrom subsequently saw the plaintiff, he apparently did not test the plaintiff's IQ or do any kind of educational evaluation.

Given the ALJ's lack of even minimal articulation of his analysis of the evidence, the court is unable to follow the reasoning of the ALJ leading to his conclusion that substantial evidence does not support a finding of disability. See Clifford, 227 F.3d at 870. Since the court is unable to follow in the ALJ's reasoning in rejecting the treating physician's opinion as well as other evidence of record, the case must be reversed and remanded for further proceedings to address these issues.

-12-

**2.	Whether the ALJ Improperly Evaluated the Plaintiff's Credibility.**

The plaintiff asserts that the ALJ failed to properly analyze his credibility pursuant to Social Security Ruling (SSR) 96-7p.  The plaintiff maintains that the ALJ improperly ignored his complaints of pain, based on a purported inconsistency between his allegations of pain and his daily activities reported in 2007 progress notes.  The plaintiff further contends that the medical expert recognized that the plaintiff's gout could be causing the pain.

The ALJ must comply with SSR 96-7p in evaluating credibility.  Lopez v. Barnhart, 336 F.3d 535, 539-40 (7th Cir. 2003).  Social Security Ruling 96-7p establishes a two-step process for evaluating the plaintiff's testimony and statements about symptoms such as pain, fatigue or weakness.  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms.  If not, the symptoms cannot be found to affect the plaintiff's ability to do basic work activities.  SSR 96-7p.  Second, if an underlying physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence and limiting effects of the plaintiff's symptoms to determine the extent to which the symptoms limit his ability to work.

If the plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the plaintiff's statements based on a consideration of the entire case record.  SSR 96-7p.  The ALJ's credibility determination is entitled to special deference because the ALJ is in the "best position to see and hear the witnesses and assess their forthrightness." Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).  Accordingly, an ALJ's

-13-

credibility determination will not be disturbed unless the plaintiff can show that it is patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003); Powers, 207 F.3d at 435.

When making a credibility determination, an "ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole. However, the ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). Rather, this is but one factor to consider, along with the plaintiff's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; any measures the plaintiff has used to relieve the pain or other symptoms; and functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3); see also, SSR 96-7p.

Social Security Ruling 96-7p does not require the ALJ to analyze and elaborate on each of these factors when making a credibility determination, but merely provides that the ALJ must "consider" certain factors, in addition to the objective medical evidence when assessing a plaintiff's credibility. Although an ALJ need not address every piece of evidence, he must articulate some legitimate reason for his decision. Lechner v. Barnhart, 321 F.Supp.2d 1015, 1027 (7th Cir. 2004). The ALJ must build a bridge from the evidence to the conclusion that the plaintiff was not credible. Id. at 1029-30; see also, Steele, 290 F.3d at 942. The ALJ cannot merely make a conclusory statement that the plaintiff's allegations have been considered and they are not credible. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In his decision, the ALJ stated that "[a]fter considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the plaintiff's statements concerning the intensity, duration and

-14-

limiting effects of these symptoms are not entirely credible." (Tr. 17). The ALJ noted that in a disability report, the plaintiff described being unable to perform any daily activities, but that "[p]rogress notes in 2007 documented that this level of incapacity did not exist." Id. The ALJ further stated that the plaintiff's "treating physician gave no restrictions, although the records were primarily during time of incarceration." Id.

The plaintiff testified that he was only able to do his past job as a packager if he carried a stool with him and was able to alternate sitting and standing. He also testified that his right hand trembles and he drops items, he has back pain if he sits too long, as well as constant pain in his back, leg, arm and feet. The plaintiff's mother also testified that the plaintiff sometimes cannot walk. During the June 29, 2007, mental status examination, the plaintiff reported that he was able to care for his personal needs and hygiene, cook using both the stove and the oven with physical limitations, perform all housekeeping and laundry duties, but that he needs someone to go shopping with him because he has "trouble finding stuff I don't know what to get." (Tr. 399). He also reported that he enjoys playing basketball.

The ALJ failed to explain how the plaintiff's daily activities were inconsistent with his allegations of disability. See Zurawski, 245 F.3d at 887 (reversing credibility determination where ALJ failed to explain how daily activities were inconsistent with the claimant's allegations). Minimal daily activities do not establish that a person is capable of substantial gainful activity. Clifford, 227 F.3d at 872. Moreover, the court notes that at the time of the plaintiff's mental status examination, the plaintiff was incarcerated and, therefore, his perception of his daily activities was likely skewed. The court also notes that Dr. Newman recognized that the plaintiff's complaints of pain were valid based on the plaintiff's gout. Accordingly, the case must be remanded for a re-evaluation of the plaintiff's credibility.

-15-

**3. Whether the ALJ Failed to Comply with SSR 00-4P by Failing to Determine Whether the Vocational Expert's Testimony was Consistent with the Dictionary of Occupational Titles.**

The ALJ determined that the plaintiff is capable of performing past relevant work as a pricer-sorter. The ALJ concluded that this work does not require the performance of work-related activities which are precluded by the plaintiff's residual functional capacity. Alternatively, the ALJ concluded that 2,000 usher jobs, 2,000 information clerk jobs and 1,000 order jobs exist in the national economy which the plaintiff could perform.

The vocational expert testified that the plaintiff's past work consisted of jobs as a hospital cleaner, assembler, hand packager, and pricer-sorter. (Tr. 457). The vocational expert testified, however, that the plaintiff's past jobs were not performed at the substantial gainful activity level and, therefore, did not constitute past relevant work. Accordingly, the ALJ erred at step four in finding that the plaintiff could perform his past relevant work as a pricer-sorter. Nevertheless, because the ALJ made alternative step four and step five determinations, any error is harmless. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires [the court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

With regard to the ALJ's step five determination, the plaintiff asserts that the ALJ erred in failing to ask the vocational expert whether her testimony was consistent with the Dictionary of Occupational Titles (DOT) and contends that the vocational expert's testimony was in conflict with the DOT. The Commissioner maintains that there are no inconsistencies between the vocational expert's testimony and the DOT.

-16-

Social Security Ruling 00-4P requires an ALJ, who takes testimony from a vocational expert about the requirements of a particular job, to determine whether the testimony is consistent with the DOT.  As the court explained in Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006):

> When a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator *has an affirmative responsibility* to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator *will*: [a]sk the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and [i]f the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

The vocational expert (VE) found the plaintiff capable of performing work as an usher, information clerk and order clerk.  The plaintiff maintains that "the usher job (DOT # 344.677-014) has a sixth digit of "7" which means that the job primarily requires handling, defined as 'Using body members, handtools, or special devices to work, move, or carry objects or materials.  Involves little or no latitude for judgment with regard to attainment of standards or in selecting appropriate tool, object or material." (Plaintiff's Memorandum at 18).  The plaintiff further asserts that the job requires bilateral grasping which is precluded by the ALJ's RFC.

The plaintiff also contends that the information clerk position (DOT # 237.367-022) has a sixth digit of "7" and has reasoning and language skills which are far above the plaintiff's educational ability.  Finally, the plaintiff asserts that the order clerk position is listed in the DOT mainly as a semi-skilled to skilled position.  He maintains that the only unskilled order clerk job (DOT # 209.567-014) requires frequent handling and fingering and has a sixth digit of "7".

At the hearing, the ALJ prefaced his questions to the vocational expert by stating: "[Y]ou're going to testify, of course, with the information contained in the Dictionary of

-17-

Occupation Titles, Selected Characteristics of Occupations. If there is a difference between your testimony and the information in those sources, you're going to let us know. Correct?" (Tr. at 456). This satisfied the responsibility to ask about any possible conflict between VE evidence and information provided in the DOT. See Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008) (holding that "the ALJ satisfied this first step by asking the VE if his testimony was consistent with the DOT").

In this case, plaintiff's representative did not raise a possible violation of SSR 00-4p at the administrative level. However, the court of appeals for this circuit has clarified that a plaintiff that does not raise a possible violation of SSR 00-4p does not forfeit the right to argue later that a violation occurred. Id. (citing Prochaska v. Barnhart, 454 F.3d 731, 735 [7th Cir. 2006]). But, if counsel fails to identify the conflicts at the time of the hearing, the plaintiff has to demonstrate that "the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that the ALJ investigate and resolve apparent conflicts between the VE's evidence and the DOT." Overman, 546 F.3d at 463 (citing SSR 00-4p; Prochaska, 454 F.3d at 735).

In this case, the conflicts between the VE's testimony and the DOT were not obvious enough that the ALJ should have picked up on them without any assistance. Nevertheless, as will be discussed below, the exchange between the ALJ and the VE – the hypothetical questions posed by the ALJ and the VE's responses to those questions – resulted in more questions than answers.

-18-

**4.** **Whether the ALJ Submitted a Proper Hypothetical Question to the Vocational Expert.**

The plaintiff maintains that the ALJ did not ask the vocational expert a proper hypothetical question. Specifically, the plaintiff asserts that "the ALJ failed to incorporate all of the limitations caused by the plaintiff's impairments, both severe and non-severe, into the hypotheticals as well as his pain and obesity, which can further limit his ability to work." (Plaintiff's Memorandum in Support of Summary Judgment or Remand at 16).

It is well established that "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the plaintiff suffers." Kasarsky v. Barnhart, 335 F.3d 539, 543 (7th Cir. 2003). If the question posed fails to incorporate all the relevant limitations, "the vocational testimony will not reveal whether there are jobs in the national economy that a person like the plaintiff could perform." Id. The relevant limitations are those limitations supported by the medical evidence. Cass v. Shalala, 8 F.3d 552, 555-56 (7th Cir. 1993).

In this case, the ALJ failed to include in the hypothetical questions the plaintiff's obesity, depression and limited education. Moreover, it is hard to decipher the answers given by the vocational expert, as well as the questions posed by the AlJ. The exchange was as follows:

> Q       Suppose we have a hypothetical limited basis, light exertional. Only frequent, non-repetitive, frequent grasping and fine finger manipulation with the right . . . dominant hand. No limitations. Frequent fine fingering manipulation with the right dominant hand. With that hypothetical individual let's assume that we don't have enough to say there's any [INAUDIBLE] time off of work because I don't think we got enough here to give past relevant work. So any jobs in the regional or national economy?
> A       Okay. Usher at approximately 2,000. Cleaner, housekeeping which is approximately 10,800. Those two jobs are a match with the Dictionary --
> Q       With the DOT?
> A       Yes. And that is all.

-19-

Q      Okay.   Say the same individual has difficulty by periodic exacerbation of his pain.  So that after doing a job for a day like this, he might not be able to make it in, or he couldn't make it in every day.  He'd miss more than two days a month.  Is that going to knock him out of those jobs or any other jobs?

A      Yes, judge.

Q      This same individual has pain during the day.  He can't concentrate on his job.  He's be off task.  Are these simple, unskilled jobs?

A      Yes, judge.

Q      Okay.  But he'd be off task on those jobs?

A      Yes, judge.

Q      Suppose the job would be limited to simple, unskilled work.  An no more than superficial contact with co-employees and the general public.  Would that knock out the usher job and housekeeping.

A      Yes, judge.

Q      Suppose the same individual is limited to sedentary exertional.  And he's limited to frequent fine fingering and manipulation.

A      That puts that – information clerk is approximately [INAUDIBLE].  Order clerk is about 1,000.  These are matches of the Dictionary of Occupational Titles.  And that's all.

Q      No say the same individual – are these simple, unskilled jobs?

A      These are SVP 2.

Q      Okay.  Say the same individual is limited in addition to no more than superficial contact with supervisors, co-employees, and the general public?

A      No.  He'd have to take orders.

Q      Okay.

A      Information clerk is just directing people to places.

Q      Okay.  Well, say the same individual had no public contact.  Would that be acceptable?

A      Yes.

Q      Now say the same individual is limited to sedentary non-exertional limitations.  But he can only do occasional fine fingering and manipulation with his dominant hand?

A      Yes.

(Tr. 457-60).  Based on the VE's testimony at the hearing, the ALJ concluded that a person with an RFC to perform light work and no repetitive but frequent fine finger manipulation and forceful grasping with the right (dominant) hand could work in the following jobs existing in the national economy: usher, 2,000 jobs, information clerk, 3,000 jobs, and order clerk, 1,000 jobs.

The defendant asserts that "the ALJ or his staff erroneously referred to the 2,000 usher jobs and other jobs as an information clerk and order clerk."  (Memorandum in Support of the

-20-

Commissioner's Decision at 11). The defendant further asserts that the VE testified to the 2,000 usher jobs and 10,800 cleaner or housekeeper jobs. However, it is not clear from the exchange between the VE and the ALJ what jobs a person with the plaintiff's RFC could perform. The ALJ's decision only further muddles this. Moreover, both jobs apparently require repetitive use of the hands and the cleaner or housekeeper job is heavy work.

"The Commissioner bears the step-five burden of establishing that the claimant can perform other work that 'exists in significant numbers in the national economy.'" Overman, 546 F.3d at 463 (citing 20 C.F.R. § 404.1560(c)(2); Britton v. Astrue, 521 F.3d 799, 803 [7th Cir. 2008]; Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 [7th Cir. 2005]). A VE's testimony satisfies the Commissioner's burden only if it is reliable. Overman, 546 F.3d at 463. "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." Id. (quoting Britton, 521 F.3d at 803). The court must defer to an ALJ's findings only if they are supported by "substantial evidence." Jones, 10 F.3d at 523.

In this case, the exchange between the VE and the ALJ is far from clear and the VE's testimony is not reliable. Therefore, the Commissioner failed to meet his burden at step five of the sequential evaluation. Thus, this case must be remanded so that the ALJ can determine whether there is work in significant numbers in the national economy that the plaintiff can perform given his residual functional capacity, age, education and work experience.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **granted.**

-21-

**IT IS FURTHER ORDERED** that this case be and hereby is remanded to the Commissioner of the Social Security Administration for further proceedings consistent with this decision.

**IT IS ALSO ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of September, 2009.

BY THE COURT:


_____ s/ Patricia J. Gorence _____
PATRICIA J. GORENCE
United States Magistrate Judge